JEFFREY L. CLEMENS
412 Dockway Drive
Huron, OH 44839
Tel: (419) 433-4438

FILED
IN CLERKS OFFICE

ORIGINAL

2010 MAY -b P 12: 59

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 10-CR-10124-DPW |
| | ) | Case No. 1:10-MJ-01016-JGD |
| Complainant, | ) | |
| | ) | **DEFENDANT'S FURTHER** |
| v. | ) | **DISCUSSION IN SUPPORT** |
| | ) | **OF HIS MOTION TO DISMISS** |
| JEFFREY L. CLEMENS, | ) | **BOISSELLE COMPLAINT,** |
| | ) | **HIS MOTION TO DISMISS** |
| Defendant. | ) | **TOBIN INDICTMENT, AND** |
| | ) | **HIS PRE-TRIAL RELEASE** |
| | ) | |

The defendant, Jeffrey L. Clemens, with to respect to several judicial notices filed concurrently, does hereby further discuss – provide supplemental argument for – his recent motions to dismiss the Boiselle Complaint and Tobin Indictment, as follows:

A)   Pre-trial release issues [prior so-called supervised release violations] relate directly to the stated basis for dismissing both the Boisselle complaint and the Tobin indictment;

B)   Prior supervised release proceedings, though masked in an air of apparent legitimacy, were, in greater part, illegitimate and served to prejudice the defendant and to cover-up police misconduct matters in Scituate, Massachusetts, issues that are themselves at the very root of the civil litigation underlying this prosecution.

C)   FBI issues of August 2006 [supervised release violation proceedings] extend to the Boiselle complaint, the Tobin indictment and, in turn, the FBI's ex parte contact with Judge Young prior to the current charging of Clemens.

## I.    INTRODUCTION

The following discussion briefly addresses prior supervised release violation proceedings involving Clemens that directly and indirectly impact his current prosecution.  These proceedings took place in 2006 and 2007 following numerous attempts by Clemens to appear in court on the matter of the Scituate charges of 2005 which eventually formed the basis for civil litigation from which this prosecution is rooted.  The conclusion is inescapable.  The current Clemens defense is wholly prejudiced by earlier federal court proceedings that impeded or otherwise thwarted his earlier attempts to resolve important state court matters.  The following discussion is therefore not only imperative but relies almost entirely on previously published documents of which this court is asked to take judice notice [filed concurrently].

## III.   DISCUSSION

### A.    Prior supervise release violation proceedings indeed relate to the current Clemens prosecution.

There are three issues to cite here.  For one, there is the absurd notion, promoted by the U.S. Probation Office in a prior prosecution of Clemens, that a U.S. Supreme Court Petition for a Writ of Certiorari written by Clemens in 2001 constitutes material that is "delusional in nature".  [*See* Defendant Request for Court to Take Judicial Notice; Excerpts of Record Dated March 22, 2007, Items G, I].  Clemens presented such petition to a mental health evaluator to which Clemens was ordered to attend in 2006 by said office.  If a petition discussing – to the highest court in the land – issues stemming a U.S. Circuit Court ruling and meeting all established formatting rules, or if letters to congressman or court clerks [Item F], or listings of past documents filed with courts [Item H], if these are considered "delusional in nature" then indeed the court entities that solicit such "findings" are seriously flawed and, frankly, are themselves in need of evaluation.

Secondly, there is the absurd notion that three [then] outstanding charges against Clemens in Scituate, later argued in civil litigation as entirely baseless, were deemed, by said evaluator, even before Clemens had a chance to appear on them much less defend himself against, as having been result of a "disruption" caused by Clemens and part of a "delusional system" attributed to him. [Item G]  That Clemens tried in vain, through *eight* separate and distinct written requests to go to Scituate [in 2006] to address and presumably dispose of said charges [Item B], all ignored or otherwise denied by said office, makes such a "finding" an even more absurd notion.  Such deference to, and reliance upon, uncontested police reporting is indeed a frightening scenario.

Finally, and especially, such "finding" was later in part a basis for the U.S. Probation Office to seek "elevated treatment" for Clemens due to a supposed failure of a "local" counselor to effectively "treat" said "delusional disorder". [*See* Judicial Notice, Opening Brief to the U.S. Sixth Circuit Court of Appeals, Page 32]  This, of course, is *most* absurd since, for one, Clemens was never given a copy of said "finding" until well *after* a so-called "violation hearing" in August 2006.  And so, he had no effective way to prevent an abuse or misuse of the "finding" at what was otherwise an "ambush" hearing on August 22, 2006 that set in play a series of events leading to a then additional delay of 16 months to attend to the charges in Scituate mentioned above.  In any case, Clemens challenged the evaluator's summary "finding" in March 2007 and such challenge, to this day, is unanswered and unopposed. [Judicial Notice, Item A]  We can consider the finding as debunked since challenges of the sort are otherwise appealable to state officials overseeing evaluators and, frankly, it seems, in the case of Clemens, no one wanted *that* to happen.

Issues and errors with the August 2006 hearing were many and they were significant – for a complete narrative, see *Opening Brief* Dated March 22, 2007 – but especially, they ultimately ignored the [then current] violation court's own assessment that the letters in question did *not*

pose a "threat" [Item E] and this, of course, is apparent from a simple reading of them [Item C].
Take a close look. Those letters ultimately cost Clemens nearly a year of imprisonment. And it
did not help that there were serious court transcript issues [*See* Opening Brief, Page 21] With such
an error ridden hearing, we cannot rely whatsoever on any record of it put out by the probation
office who brought about the hearing. Call it a "violation"? No, call it a violation of the right of
Clemens to address matters in Scituate otherwise flatly denied in 2006 and wholly due to the U.S.
Probation Office and FBI. As the court concluded as for the numerous travel requests of Clemens
[Item B]: "Let me address that. I have discussed that matter at length with [USPO] Granberry,
and she, in turn, has been in touch with the officials in Massachusetts. At the present time, I will
not permit him [Clemens] to go to Massachusetts." [*See* Opening Brief, Page 34]

"*Officials in Massachusetts*"? Who, the people who would eventually bring this current
prosecution of Clemens? Indeed, yes, the very people who are again set to benefit from a federal
court proceeding involving the prosecution of Clemens for what? A letter, an email, mere words,
rhetoric, wordplay, figurative speech? This must stop, and must stop *now*.

What does all of this mean? That the 2006 proceedings were *inappropriate*, imprisonment
of Clemens absolutely *draconian* and the subsequent cascade effect of two later violation hearings
as wholly *unfair* and *unreasonable*. Essentially, Clemens was kept from Scituate and three open
[baseless] charges against him. But there was yet another more nefarious effect, the prejudicing
of Clemens as one whose allegations against entities such as police [or judges] can be summarily
dismissed as "delusions" and not legitimate complaints. How long is this falsehood, promoted
by the U.S. Probation Office, with respect to Clemens, expected to last? Given this prosecution,
the Scituate Police [and their advocates, including the FBI], it seems, are still at it. In all fairness,
2010 must not be a repeat of 2006 and that means we must recognize and eliminate all prejudice.

**B.     Prejudice and police misconduct underscore the current Clemens prosecution.**

Actually, this section is Part A *revisited* and merely requires a quick *review* of the time

lines involved here. *May 2005.* Clemens makes an inquiry, the Scitutate Police [falsely] arrest

him [with a police report to match] and throw three [wholly unfounded] charges at him. The next

year Clemens makes *eight* attempts to address those charges, is thrown into a violation hearing,

then thrown into jail and home confinement for 12 months. Eventually, Clemens "borrows" his

own evaluator file [to get the "scoop" on what was being done to him by the probation office],

gets violated *again* on supervised release, finishes up, goes to Scituate, finally appears, and

months later is thrown into a trial situation [the presiding judge ultimately said the case was 3 ½

years old – care to guess why? – and *must* go to trial], ordered to represent himself, is found guilty

of disorderly conduct and thrown into jail for six months, the maximum allowed by law! And who

arguably was responsible for said trial debacle [a debacle for Clemens, anyway]? The supposed

victim in this prosecution, Steve Pfaff, counselor to the man who testified against Clemens at the

September 2008 "forced trial" and who is what? One of those "Officials in Massachusetts" to

which the judge so-referred to in August 2006 in a hearing where Clemens was not only denied

travel to Massachusetts but sentenced to imprisonment as well in a hearing from hell? [Opening

Brief, Page 34]  Indeed, so [or else, of course, it was O'Hara's boss, Lt. John Rooney].

There is little more to say. Throw in a couple of lawsuits related to the Scituate Police

prosecution [filed by Clemens in 2007 and 2009], throw in Steve Pfaff, throw in an email wherein

issues of misconduct during those lawsuits are mentioned – stuff that can send people to prison –

and there you have it. Further prosecution of Clemens for a purpose other than justice, for the

covering up police misconduct [or, for that mater, *attorney* misconduct, that is, unless, of course,

the suborning of perjury is not considering misconduct].  Are there others involved? Indeed.

**C.**     **Past FBI issues extend to the current Clemens prosecution introduced by FBI Agent Boisselle and her complaint and carried forth by USA Tobin and his indictment.**

One letter [and apparently, just one off-color remark] to an FBI agent [Item C], one phone call [Opening Brief, Page 5] and what? Clemens gets sent up for close to *one year*? Is the FBI caller [Greenawalt] *or* the subject of said letter [FBI Agent Sotleo] the problem here? It does not matter because, frankly, they are *both* FBI agents. Indeed, agents only investigate alleged crimes and do not prosecute them. With the sworn complaint process, however, and a magistrate judge rubber stamp, suddenly the FBI is in the prosecuting business. Sotelo did this to Clemens in 2005 [while her colleague that same month, May 2005 [Agent David Kice], verifiably inquired of the Scituate Police report written by O'Hara]. Not to question the complaint process but ordinarily persons are first indicted before a grand jury. But, alas, with a judge signing off on probable cause to arrest, what grand jury would "overrule" a judge and *not* indict a person that the FBI "believes" as having supposedly committed a crime, in the case of Clemens, writing and sending something that was supposedly a "threat"? *No grand jury would.*. And that is why the conduct of FBI Agent Boiselle is important here, especially in light of the August 2006 proceedings involving a mere phone call that [ we may never know] was likely prompted by Sotelo, original arrester of Clemens in May 2005 just 12 days following his Scituate inquiry-turned-arrest and flawed prosecution.

But what are we really talking about here? *Who* are we really talking about here? We are talking about Judge William G. Young who, on March 9, 2010, issued an order in a related civil case that all but ruled [right or wrong, does not matter] that the email communication in question was an actionable threat thus sending the signal, to whoever gave the communication to him, that, yes, the court will, for all intents and purposes, sign an arrest warrant. And who was such person? Who was the person who contacted Young [who, in turn, threw out the Clemens litigation against

Pfaff, O'Hara and the Town of Scituate]? Unless the FBI or U.S. Attorney's Office [or Judge

Young himself] themselves know, we simply do not know as it is not publicly known yet it

should be. And so, this sounds an awful lot like a prosecution brought by the court itself – and

why? [check the email, first paragraph, for answer] – *and* Pfaff [the "victim" here] whose beloved

law school classmate [Tobin, discussed in previous pleadings] conveniently took over the what?

*The Boisselle prosecution*. And that, like in May 2005 and August 2006, again points to the FBI.[1]

## IV.   CONCLUSION

Given the above [a debunked diagnosis and series of discredited violation proceedings],

and in reviewing the judicially noticed documents so referred, this court must give no reverence

to any attempt by the U.S. Attorney's Office, through reports or arguments, to seek a pre-trial

detention of Clemens based on such violation proceedings. More importantly, given commonality

of parties involved between prior proceedings and the current prosecution [those associated with

the Town of Scituate], the above discussion furthermore supports dismissal of the very charging

instruments used to bring this prosecution the continuation of which represents abuse of process.

---

[1] That Robert Burnett was referred to in a letter [Item F - Ninth Circuit Court Clerk Letter Dated January 28, 2005] deemed "delusional in nature" [*See* Discussion A] is coincidental, of course. That Robert Burnett [classmate of Ronald Bass who is, of course, clearly referred to in the subject email that brought on this prosecution] was, in greater part, a former law school classmate of Young, well, that may be a coincidence, too. *But* one must consider this. That Robert Burnett is a longtime friend and associate of Steve Trott, the ninth circuit judge under review in the Petition for Writ of Certiorari mentioned in the above discussion [Item I]. With the actor Tim Robbins being likewise a longtime associate of Trott and Burnett and himself longtime Creative Artists Agency client [all Clemens civil litigation has at its root issues with Creative Artists], and Trott himself a 1965 graduate of Harvard Law [Young was 1967; Burnett was 1966, Ronald Bass, 1966], and with Trott being a brother-in-law to Dr. Charles DeSeve, economist and paid consultant to Detroit on the subject of an MGM Grand casino proposal [passed, and built], and with a certain Bruce Gebhardt, retired FBI chief, among the ranks of MGM Grand [head of security], *and* with a prior federal prosecution of Clemens having gone from Sotelo [previously discussed] to a signed indictment by U.S. Attorney Steve Clymer [an associate of MGM's Jay Rakow at Cornell Law School], all things considered, there is something horribly prejudicial here with this whole Young-Boiselle-Tobin prosecution.

## IV.    REMEDY SOUGHT

The court is asked to take this document under review in its consideration of the defendant's prior motion to dismiss the original Boiselle complaint, his prior motion to dismiss the current Tobin indictment,  his prior request for inspection of grand jury transcripts as well as in the consideration of the immediate release of Clemens from any restrictive conditions or custodial arrangements of pre-trial release.

Respectfully submitted,

Jeffrey L. Clemens                              Dated this 3rd day of May 2010

## DECLARATION OF MAILING

I am a citizen of the United States and a resident of the State of Ohio. I am over the age of eighteen. My address is:

412 Dockway Drive Huron, OH 44839

On May 3, 2010 I served the within document:

DEFENDANT'S FURTHER DISCUSSION IN SUPPORT OF HIS MOTION
TO DISMISS BOISSELLE COMPLAINT, HIS MOTION
TO DISMISS TOBIN INDICTMENT AND HIS PRE-TRIAL RELEASE

on the complainant in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon prepaid for FIRST CLASS in the United States mail, Huron, Ohio addressed as follows:

David G. Tobin                     **Lead Attorney**
United States Attorney's Office    **United States**
1 Courthouse Way
Boston, MA 02210

I declare under penalty of perjury that the foregoing is true and correct.

Signature: _Donald J. Clemens_

Donald Clemens

Date: 05-03-10