```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

UNITED STATES            )
                         )
                         )      CRIMINAL ACTION NO.
                         )      10-10124-DPW
       v.                )
                         )
JEFFREY L. CLEMENS,      )
                         )
         Defendant.      )
                         )
                         )

## MEMORANDUM AND ORDER
### April 22, 2011

Defendant Jeffrey L. Clemens ("Clemens") moves to dismiss the indictment against him on the grounds that (a) the communications which form the basis of the indictment do not contain threats under 18 U.S.C. § 875(c) and are protected speech under the First Amendment; (b) the indictment's criminal forfeiture allegation lacks basis; (c) this criminal action amounts to malicious prosecution; and (d) the government improperly instructed and misled the grand jury.[1]

### I. BACKGROUND

On April 14, 2010, a grand jury returned an indictment against Clemens charging him with two counts of violating 18

---

[1] This memorandum considers the arguments made by Clemens in his various filings, including Docket Nos. 6, 8, 11, 12, 13, 26, 27, 35, 44, 50, 51, 53, & 54. Clemens also submitted a motion to dismiss the criminal *complaint*, which appears as Docket No. 56. I consider the arguments made in connection with that motion to the extent that they are relevant to the *indictment*, which superceded the *complaint*; however, I will treat motion No. 56 as moot because the *indictment* is now the applicable charging document.

U.S.C. § 875(c), which prohibits transmitting "in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." In addition, the indictment contains a forfeiture allegation requiring that the Defendant, upon conviction, "forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses."

Counts One and Two of the indictment allege that on or about March 8, 2010 Clemens "did willfully and knowingly transmit in interstate commerce from the State of Ohio to the Commonwealth of Massachusetts" two e-mail communications to two separate recipients, Stephen Pfaff and Patricia Vinchesi, each containing "a threat to injure" the respective recipient.[2]

Pfaff is an attorney who represented the Town of Scituate, Massachusetts and other defendants in two successive civil actions brought by Clemens as a *pro se* plaintiff. The first case was filed by Clemens on May 3, 2007 and was dismissed at the summary judgment stage by an order and memorandum dated May 22, 2009, *Clemens v. Town of Scituate*, No. 07-cv-10845, 2009 WL 1448807 (D. Mass. May 22, 2009) (Stearns, J.) (*appeal dismissed*

---

[2] Copies of the e-mails, the authenticity of which is not in dispute, are attached hereto as Exhibits 1 and 2.

*on motion of plaintiff*, No. 09-1827 (1st Cir. Jun. 14, 2010). The second case was filed by Clemens on October 27, 2009 and was dismissed with prejudice by the court when the communications at issue in the current criminal matter came to light. *Clemens v. Town of* Scituate, Order Dismissing Case, Dkt. No. 63, Case No. 09-cv-11821 (April 2, 2010) (Young, J.) *aff'd* No. 10-1536 (1st Cir. Nov. 10, 2010).

It is alleged that Pfaff received the e-mail which forms the basis for Count One of the indictment (the "Pfaff e-mail"), *see* Exhibit 1 to this Memorandum and Order, on or about March 8, 2010 from the e-mail address "Sunhuron3@aol.com." The Pfaff e-mail bore an electronic signature indicating it was from Clemens. *Id.* The Pfaff e-mail references the two civil cases involving Clemens and the Town of Scituate; it also apparently refers to a motion to dismiss filed by Pfaff in the second case days before the e-mail was transmitted.

While the Pfaff e-mail as a whole must be considered, the following statements contained in that e-mail give some sense of the basis for the criminal charges brought in this case:

- I, at this point, will not ever allow the SPD and HDC to get away with what they have done.[3]
- One way or another, I will have my day in court or the back alley [hint hint, veiled threat potential here].
- You, at this point, I assure you, will get what you

---

[3] The SPD apparently refers to the Scituate Police Department, and the HDC apparently refers to the Hingham District Court.

> deserve.  Pow! Bang! Spat!  I really, truly and
> sincerely wish you were dead.
> - I am very much looking forward to putting you in your
>   place, Mr. Pfaff.
> - Oh, how I wish a 10-ton I-beam would fall on you . . .
>   Splat! Boy, would I love to seet that!
> - From now on, be sure and watch your backside, Mr.
>   Pfaff.  God may step up to the plate at any moment.  I
>   dunno, I got this feeling someone's going to get hurt
>   REAL BAD.  And it ain't gonna be me.

*Id.* (emphasis in the original).

The cover page of the e-mail which forms the basis for Count Two (the "Vinchesi" e-mail) is attached to this Memorandum and Order as Exhibit 2.  It was sent on or about March 8, 2010 from the Sunhuron3@aol.com e-mail account, to the Scituate Town Manager, Patricia Vinchesi.  The cover page of the Vinchesi e-mail stated "Mr. Vinchesi: You all might be digging yourself a grave.  Jeffrey,"  *Id.* (gender error as to addressee in the original).  The Pfaff e-mail appeared as an attachment to the Vinchesi e-mail.

## II.  ANALYSIS

### A.  *"True Threat" Standard and First Amendment Protection*

The defendant argues that, as a matter of law, the two e-mails do not amount to "true threats," and the indictment must therefore be dismissed.  He also argues that the e-mails are speech protected by the First Amendment.

I conclude that a reasonable jury could find that the communications at issue constitute "true threats."  A "true threat" has been made if the sender "should have reasonably

foreseen that the statement he uttered would be taken as a threat by those to whom it is made." *United States v. Fulmer*, 108 F.3d 1486, 1491 (1st Cir. 1997). *Fulmer* articulated this standard with respect to a threat made to a federal agent in violation of 18 U.S.C. § 115(a)(1)(B), but noted its applicability to other provisions, including, § 875, the provision at issue here. *Id.* at 1491 & n.1; *see also United States v. Whiffen*, 121 F.3d 18 (1st Cir. 1997) (applying the *Fulmer* standard to 18 U.S.C. § 875); *United States v. Nishnianidze*, 342 F.3d 6 (1st Cir. 2003) (same). The standard is an objective one which "takes into account the factual context in which the statement was made" but not "the unique sensitivity of the recipient." *Fulmer*, 108 F.3d at 1491. The testing is objective as to the recipient, as well as the sender, because "[a] true threat is one that a reasonable recipient familiarized with the context of the communication would find threatening." *Nishnianidze*, 342 F.3d at 15, *citing Whiffen*, 121 F.3d at 20 (quoting *United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994)).

Viewing the communications in light of the *Fulmer* standard, I conclude that a reasonable jury could find that the statements constituted a threat. Whether the standard is met "'is an issue of fact for the trial jury,'" *Fulmer*, 108 F.3d at 1492 (quoting *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994)), so long

as there is sufficient evidence to make such a determination.
Sufficient evidence exists here.

Clemens argues that the e-mails contain no threat, but merely express hopes and wishful thinking. Certain of the statements contained in the e-mail do express hopes or wishes but hardly of a benign nature (e.g., "how I wish a 10-ton I-beam would fall on you . . ."). Others appear to refer to Clemens's intention to do something (e.g., "I will have my day in court or in the back alley"; "I am very much looking forward to putting you in your place"; "From now on, be sure to watch your backside"). These statements, and others, must be considered in light of the entire communication and the context - highly contentious civil litigation - in which they were sent. In a vacuum, many words and phrases might have ambiguous meanings, including whether they express a threatening intention or a malign hope, but "[t]he use of ambiguous language does not preclude a statement from being a threat." *Fulmer*, 108 F.3d at 1492.

Clemens relies on *Watts v. United States*, 394 U.S. 705 (1969) (per curiam) to argue that his communications are protected by the First Amendment. *Watts* involved statements made against the President at a public rally, and the "primary concern" of the *Watts* court was "the protection of constitutionally protected political speech." *Whiffen*, 121 F.3d

at 22. The statements alleged here are not political speech;
unlike political speech "a true threat is unprotected by the
First Amendment." *Fulmer*, 108 F.3d at 1492-93 (citing *United
States v. Orozco-Santillan*, 903 F.2d 1262, 1265-66 (9th Cir.
1990)). Because there are sufficient facts from which a finder
of fact could conclude that the communications constituted
threats, First Amendment protections do not require dismissal of
the indictment.[4]

## B. *Forfeiture Allegation*

Clemens argues that the indictment's forfeiture allegation
is baseless and prejudicial. I find it to be neither as a matter
of law. Federal Rule of Criminal Procedure 32.2(a) provides that
a judgment of forfeiture may only proceed if the indictment
contains a notice to the defendant of the government's intention

---

[4] Clemens relies in large part on *United States v. Baker*, 890 F.Supp. 1375 (E.D.Mich. 1995), to argue that the e-mail communications did not amount to true threats and are protected by the First Amendment. *Baker* addresses facts that are readily distinguishable from those at issue here. The defendant in *Baker* engaged in private e-mail conversations with another individual in which they shared fantasies and desires about harming unidentified individuals. In dismissing the indictment, the court observed that while "'whether words used are a true threat is generally best left to the triers of fact," it also is an obligation of the court that "where the factual proof is insufficient as a matter of law . . . the indictment [should] be dismissed.'" *Id.* at 1390 (quoting *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982)). The e-mails at issue here related to specific individuals and contained language a jury could find sufficient to constitute a "true threat." As a result, dismissal by the court is inappropriate here and the matter should be left to the jury.

7

to seek forfeiture.  Rule 32.2(a) further states that "[t]he indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks."  The allegation in the indictment constitutes notice to Clemens in conformance with this rule.

The government cites 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(D) and 28 U.S.C. § 2461(c) as the legal bases for the inclusion of the forfeiture allegation in this action.  Section 981 authorizes the civil forfeiture of property "which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity'" under 18 U.S.C. § 1956(c)(7).  "Specified unlawful activity" is defined to include violations of 18 U.S.C. § 875.  18 U.S.C. § 1956(c)(7)(D).  Thus, even though 18 U.S.C. § 981 does not itself specifically list § 875, it incorporates by reference a group of unlawful activities which are defined specifically to include violations of § 875.  The government is authorized by 28 U.S.C. § 2461(c) to include the allegation of forfeiture in a criminal indictment where 18 U.S.C. § 981 authorizes the civil forfeiture.

Although the government has not alleged what, if any, property may be subject to the forfeiture, no such showing is required at the motion to dismiss stage.  The inclusion of the place holder forfeiture allegation was not improper nor was it

prejudicial to Clemens.  The potential for forfeiture in a case in which computer equipment is used to commit a crime is sufficiently likely to justify a forfeiture allegation. Whether the allegation is supportable must await further proceedings.

*C.  Prosecutorial Misconduct*

Clemens alleges that the complaint and indictment resulted from prosecutorial misconduct.  In particular, Clemens alleges that the instant criminal case is motivated by relationships that Assistant United States Attorney David Tobin allegedly has with Pfaff and other individuals involved in the prior civil actions. Apart from the collocation of circumstance, Clemens provides no facts to demonstrate that prosecutorial misconduct has occurred in this case, and I find that there is insufficient basis to make such a finding.

As a basic proposition, the issuance of the indictment by a grand jury undercuts Clemens's accusations of malicious prosecution.  Generally a grand jury indictment definitively establishes probable cause" unless "law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury." *Gonzalez Rucci v. U.S. Immigration & Naturalization Serv.*, 405 F.3d 45, 49 (1st Cir. 2005).  Absent knowingly false testimony – and none is alleged here – the grand jury's finding of probable cause defeats allegations of malicious prosecution.  *Id.; Kennedy v. Town of Billerica*, 617 F.3d 520,

534 (1st Cir. 2010). Although Clemens alleges certain improprieties, discussed in the next section, with respect to the grand jury proceedings, he makes no specific allegations that law enforcement officials obtained the indictment through the knowing presentation of false testimony.

### D. *Misconduct With Respect to Grand Jury Proceedings*

Clemens alleges various prejudicial errors in the grand jury proceedings which he argues are grounds for dismissal of the indictment. He alleges that (a) AUSA Tobin did not instruct the jury as to what constitutes a "threat" for purposes of the charged crime; (b) the grand jury was not properly informed that a "curse," by law, is not a threat; (c) AUSA Tobin improperly introduced prior instances of Clemens making threats without providing other background information, *id.* at 12-20; (d) no information, fact or evidence was presented with respect to the criminal forfeiture clause, *id.* at 20-21; (e) references were made to alleged telephonic threats without presenting them to the grand jury; and (f) references to lawsuits brought by Clemens against the Town of Scituate and other defendants were inaccurate and did not mention the second suit.

Although Clemens alleges broadly that the grand jury proceeding involved "[l]ies (even if by omission, an apparent Tobin specialty), deceit, and prejudice," and "material misrepresentations and omissions," he does not make specific

allegations of a law enforcement officer offering knowingly false testimony.[5]

A grand jury's function is fundamentally different from that of a petite jury. Its "task is to conduct an *ex parte* investigation to determine whether or not there is probable cause to prosecute a particular defendant." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 298 (1991). As a general matter, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id.* at 300. Challenges to an indictment "based on prosecutorial misconduct before the grand jury" are reviewed under a "harmless-error standard." *United States v. Reyes-Echevarría*, 345 F.3d 1, 4 (1st Cir. 2003). In applying the harmless-error standard, when the "court is asked to dismiss an indictment before the conclusion of a trial, the standard of prejudice is a high one: that 'dismissal of the indictment is

---

[5] Clemens also alleges that the FBI engaged in misconduct with respect to its investigations of the criminal activity alleged in this action. He argues that a 302 Report prepared by Special Agent Rachel Boisselle (sometimes referred to by Clemens as Special Agent Rachel Scire) contained false information and prejudiced the prosecution and the grand jury proceedings. The Report is dated March 18, 2010 and recounts Special Agent Boisselle's interview of Pfaff. Although Clemens's account differs from the one reportedly given by Pfaff to Special Agent Boisselle, this difference is not a basis for challenging the grand jury proceedings or the prosecution in this case. Clemens does not allege that the purportedly false information in the 302 Report was presented to the grand jury and does not allege Special Agent Boiselle knew any statements were false.

appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.'" *In re United States*, 441 F.3d 44, 60 (1st Cir. 2006) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotations omitted)).

The kind of misconduct alleged by Clemens does not rise to the high level of prejudice required to dismiss an indictment.

With respect to the instruction as to what constitutes a "threat" under law, the transcript of the proceedings shows that AUSA Tobin correctly outlined the applicable legal standard described *supra* at Section II.A. He stated that "the test for what constitutes a threat, is 'whether the defendant should have reasonably foreseen that the statement he uttered would be taken as a threat by those to who it was made.'" Federal Grand Jury Proceedings Transcript at 3, Apr. 14, 2010, Dkt. No. 61, Ex. 2. The ensuing discussion of the standard also accurately characterizes its contours. *Id.* at 3-7. As a result, Clemens's concern about the instruction is unfounded.

Furthermore, in light of these instructions on the law, the colloquy between AUSA Tobin and a grand juror regarding whether a "curse" could be a threat, *id.,* Ex. 4 at 13-14, was appropriate. The determination whether there is probable cause that certain

statements, taken in context, constitute "threats" is a factual question for the grand jury, even if those statements could also be characterized as a "curse." AUSA Tobin properly indicated that this determination was for the grand jury to decide.

The statements made by Special Agent Boiselle and AUSA Tobin about prior accusations, the Scituate lawsuits and the prior telephone communications were generally accurate and do not rise to the level of prejudicial misconduct. With respect to the telephone communications received by Pfaff, Special Agent Boiselle reported that Pfaff felt "threatened by the communications," including telephone calls, but that "the last threat came via e-mail." *Id.*, Ex. 4 at 6. The proceedings were not prejudiced by the fact that no transcripts of any *telephone calls* were presented. The issue before the jury was whether the *e-mail communications* contained threats.

Clemens generally argues that the omission of certain information was prejudicial. This information, including Clemens's background as a screenwriter and further details about the Scituate lawsuits, is, at best, collateral to whether there was probable cause to find he sent threatening e-mails. There is no basis for finding that these omissions substantially influenced the outcome of the grand jury deliberations.

Finally, as noted *supra* at Section II.B, it was not improper to include the forfeiture clause in the indictment and, because

it does not allege separate criminal activity, the allegation need not be based on a separate showing of probable cause. Moreover, Clemens does not establish that the grand jury was substantially influenced by its inclusion given its essentially derivative character from the underlying criminal charges.

### III. CONCLUSION

I find no basis in the arguments asserted by Clemens to dismiss the indictment. Whether the government can prove the allegations contained in the indictment is a matter for the trial jury to decide. Accordingly, I DENY the defendant's Motion to Dismiss (#44).

                                          ***/s/ Douglas P. Woodlock***
                                          DOUGLAS P. WOODLOCK
                                          UNITED STATES DISTRICT JUDGE

Exhibit 1

Dearest Mr. Pfaff:

The judge to whom you just motioned, William G. Young, by the way [perhaps you knew already], graduated Harvard Law with Alan Alexander, long and dear friend and associate to Ronald Bass, credited author of the movie Rain Man which you took it upon yourself to refer to in your recent motion before him [Young]. Only thing is, Mr. Bass went to Harvard Law School, too, and graduated but one year before Mr. Young.

Gee, do you suppose they knew each other? Exchanged notes? Took Civil Procedure together?

If you want to file crap like your Rule 12 motion, fine. Apparently, the truth means nothing to either you or the police [obviously, you motioned to avoid discovery]. Given the recent Stearns disqualification [which you failed to mention in your motion], I believe you are playing a dangerous game, a *very* dangerous game. I have every hunch someone is going to get hurt. At this point [years of police/court bullshit, and your crap], I'm rather hoping someone will [deserving of it, of course].

Have you ever been punched in the face? Well, I was, at PCCH, thanks to O'Hara and Moynahan and now, frankly, I rather hope you experience that same thrill someday, figuratively or otherwise, maybe even see one of your "clients" go to prison, you get disbarred, "taken to a chop shop on Staten Island", whatever.

There was never any "argument" between O'Hara and I on May 12, 2005. He is one lying son-of-a-bitch and you knew it on September 17, 2008 when you invited him to sit in on the Goyette deposition. And you knew O'Hara was going to lie at the September 18, 2008 "trial". And you now expect to let your misconduct be a basis for a Rule 12 motion? What, I pled to "sufficient facts"? Bullshit. There was never any sufficient facts to begin with much less plea to. You and your people systematically BUTTFUCKED me and knew it, too.

I will say it now, once. I, at this point, will not ever allow the SPD and HDC to get away with what they have done. They're an affront to all that is [pretended to be] American Democracy and Justice, as are you. One way or another, I will have my day in court or the back alley [hint, hint, veiled threat potential here].

You do be careful now, you hear? And by all means, run to your FBI friends, I would encourage it. After all, perjury is a federal offense too, especially when the victim is from out-of-state. Besides, it [you running to the feds] will give me a chance to make *my* case. Yeah, go ahead and call the FBI and say something like "Oh, Mr. Clemens "threatened me" in an email last night". Yeah, right. Five years, and this ain't over. And do you know why? I mean, really, why is this whole thing not over? Because of people like you, who crossed the line [in September 2008], and O'Hara and Moynahan, who crossed certain lines, too. You, at this point, I assure you, will get what you deserve. Pow! Bang! Splat! I really, truly and sincerely wish you were dead.

I am very much looking forward to putting you in your place, Mr. Pfaff. You disgust me. You are absolute filth [proof positive that a suit and tie ultimately doesn't not make a person "good" or "respectable"]. Yeah, remember Stearns and the whole Laveroni default? Sure you do. And surely, you will pay the price some day for the many days of incarceration I had to endure BECAUSE OF YOU Mr. Hired in 2007 Over A Year Before The September 2008 Trial That Gave You Summary Judgement Pfaff.

Oh, how I wish a 10-ton I-beam would fall on you, O'Hara, Rooney and Shelly right now. Splat! Boy, would I love to see that!

Perhaps someday I will [or, at least, an equivalent experience]. As far as I am concerned, neither you nor your partners in crime deserve your freedom right now.

From now on, be sure and watch your backside, Mr. Pfaff. God may step up to the plate at any moment. I dunno, I got this feeling someone's going to get hurt REAL BAD. And it ain't gonna be me.

Here's to Law and Order. And yes, you can expect a full briefing from me in the coming days addressing your truth-twisting truth-burying masterpiece of a motion. Rationalize all you want but come Judgment Day you've had it.

Jeffrey Clemens

Exhibit 2

**From:** Sunhuron3@aol.com [mailto:Sunhuron3@aol.com]
**Sent:** Monday, March 08, 2010 10:34 PM
**To:** pvinchesi@town.scituate.ma.us
**Subject:** Fwd: For Your Information

Mr. Vinchesi:

You all might be digging yourself a grave.

Jeffrey